22CA1017 Peo v Ibarra 11-14-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1017
City and County of Denver District Court No. 21CR1655
Honorable Martin F. Egelhoff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jacob R. Ibarra,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE NAVARRO
Dunn and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jacob R. Ibarra, appeals the judgment of conviction entered on a jury verdict finding him guilty of tampering with physical evidence.  We affirm.

## I.    Background

¶ 2    The prosecution charged Ibarra with tampering with physical evidence and two counts of cruelty to animals after an incident that resulted in his dog's death.  Before trial, the trial court granted the prosecution's motion to dismiss one of the cruelty to animals counts.

¶ 3    At trial, the prosecution presented evidence that Ibarra and his friend drove with Ibarra's dog in the bed of his pickup truck.  The dog wore a harness and was attached to the truck by its leash.  Though Ibarra or his friend periodically looked back to check on the dog, at some point the dog jumped out of the truck.  Other drivers alerted Ibarra, who pulled over.  Unfortunately, the dog suffered a serious head injury and died on scene.  Ibarra and his friend left in Ibarra's truck, without the dog, while bystanders called the police.

¶ 4    Approximately a week later, law enforcement officers found Ibarra's truck.  The tailgate had been painted from red to black, so it matched the rest of the black-colored truck.  A temporary tag had

been removed from the back window (and was recovered in the front seat). The dog's leash was never found.

¶ 5 Ibarra defended the charges on a theory that the dog's death was an accident and he did not tamper with physical evidence. The jury agreed in part, acquitting him of the cruelty to animals count but convicting him of tampering with physical evidence.

## II. Sufficiency of the Evidence

¶ 6 Ibarra argues that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that he was guilty of tampering with physical evidence. We disagree.

## A. Standard of Review

¶ 7 Irrespective of preservation, we review de novo whether the trial evidence was sufficient to sustain the jury's verdict. *McCoy v. People*, 2019 CO 44, ¶ 27; *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We give the prosecution the benefit of every reasonable

inference that can fairly be drawn from the evidence, so long as any inference is supported by a convincing logical connection between the facts established and the conclusion inferred. *People v. Perez*, 2016 CO 12, ¶ 25; *People v. Villalobos*, 159 P.3d 624, 627 (Colo. App. 2006) ("[W]here reasonable minds could differ, the evidence is sufficient to sustain a conviction.").

## B.    Analysis

¶ 8    As relevant here, a person commits the crime of tampering with physical evidence "if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he . . . [d]estroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its verity or availability in the pending or prospective official proceeding." § 18-8-610(1)(a), C.R.S. 2024.

¶ 9    Ibarra argues that there was insufficient evidence that he acted "without legal right or authority." *Id.* He asserts that, because the evidence with which he tampered — his truck and his dog's leash — was his own constitutionally protected property and "constitutionally protected rights do not suddenly cease the moment a crime is allegedly committed," he was permitted to

"exercise his own authority" over these items as he wished.  In other words, he says this statute does not apply to a person's tampering with their own property.  We are not convinced.

¶ 10    Although ultimately raising a sufficiency-of-the-evidence claim, Ibarra also presents a question of statutory interpretation, which we review de novo.  In construing the statute, we aim to ascertain and give effect to the General Assembly's intent.  *Dubois v. People*, 211 P.3d 41, 43 (Colo. 2009).  Further, we presume that the General Assembly intends "a just and reasonable result when it enacts a statute, and a statutory construction that defeats the legislative intent will not be followed."  *People v. Carian*, 2017 COA 106, ¶ 15; *see* § 2-4-201(1)(c), C.R.S. 2024.

¶ 11    "The intent of the General Assembly in enacting the tampering statute is clear: to punish attempts to subvert the administration of justice."  *People v. Rieger*, 2019 COA 14, ¶ 20; *see also People v. Atencio*, 140 P.3d 73, 77 (Colo. App. 2005) ("[I]t is evident from the language of [section 18-8-610] that the General Assembly intended to criminalize behavior that interferes with an official proceeding . . . .").  Regardless of who owns the evidence, allowing a person to intentionally conceal, remove, or alter evidence of a crime

4

when they believe an official proceeding is pending or about to be instituted would run contrary to the legislative intent to protect the administration of justice.

¶ 12   On a related note, we conclude that Ibarra overstates a person's legal right or authority over their property. Property rights are not absolute; rather, "[p]roperty can be used even by its owner only in accordance with law." *United States v. Balt. & O. R. Co.*, 333 U.S. 169, 177 (1948). Indeed, the state can restrict how a person uses or disposes of their property in various ways. *See, e.g.*, § 18-4-511(1), C.R.S. 2024 (prohibiting a person from leaving litter on public or private property); § 18-12-104, C.R.S. 2024 (prohibiting a person from defacing a firearm's serial number).

¶ 13   As described, the statute at issue here criminalizes tampering with physical evidence, thereby restricting a person's ability to alter or dispose of property with the intent to impair its availability in an official proceeding when the person believes such official proceeding is pending or about to be instituted. *See* § 18-8-610(1)(a). Thus, a person does not have "legal right or authority" to intentionally impair the verity or availability of physical evidence in an official

proceeding by concealing, removing, or altering that evidence merely because the person owns it.

¶ 14     This interpretation is consistent with a prior opinion from a division of this court, which recognized that the tampering statute applies to a person's attempt to conceal a gun he used in a crime. *See People v. Newton*, 2022 COA 59, ¶¶ 4, 32-34. The *Newton* decision did not suggest that the gun at issue belonged to anyone other than the defendant; nor did the decision suggest that ownership of the property matters to application of the statute.

¶ 15     Indeed, Ibarra's interpretation would defeat the legislative intent of a just and reasonable result — and would lead instead to an absurd result — by exempting from the tampering statute any perpetrator who uses their own property in the commission of a crime. Ibarra's view of the statute would permit a perpetrator who killed someone to freely conceal or dispose of the weapon, with the intent to avoid criminal liability, so long as the perpetrator owned the weapon. We will not adopt such an illogical construction of the tampering statute. *See People v. Garcia*, 2016 COA 124, ¶ 9 (Courts "avoid constructions that would lead to an illogical or absurd result,

6

along with those which would be at odds with the overall legislative scheme.").

¶ 16    Finally, we note that Ibarra invokes various constitutional provisions in support of his interpretation of the tampering statute, including a right to property that cannot be deprived without due process of law. He concludes that the "legislature would not intend to draft a statute that would stand in opposition to these strong constitutional protections" and "[b]ased on the plain meaning, and read to ensure harmony with these sensibilities, the legislature drafted a statute that protects those who act in accordance with their constitutionally protected property rights." Although Ibarra does not name the canon of statutory construction on which he relies, he appears to rely on the "doctrine of constitutional avoidance" (also known as the "presumption of constitutionality"). *People v. Ross*, 2021 CO 9, ¶ 35 & n.6. As pertinent here, that doctrine directs courts, where possible, to interpret ambiguous statutes to avoid rendering them unconstitutional. *See id.* at ¶ 35 n.6; *Mesa Cnty. Bd. of Cnty. Comm'rs v. State*, 203 P.3d 519, 527 (Colo. 2009) ("A reviewing court must assume that the 'legislative body intends the statutes it adopts to be compatible with

7

constitutional standards.'") (citation omitted).  This doctrine does not apply here, however, because Ibarra does not argue that the tampering statute is ambiguous.  *See Ross,* ¶ 35.  On the contrary, he asserts that the plain meaning of the statute is "clear" and aligns with his view.  Likewise, we do not discern ambiguity in the statute, but we disagree with Ibarra's interpretation of it.

¶ 17    Applying our interpretation of the tampering statute, we conclude that the prosecution presented sufficient evidence to permit the jury's guilty verdict.  The prosecution presented evidence that Ibarra's truck had been concealed and altered — the temporary tag was no longer on the back window and the back of the truck had been painted black.  The prosecution also presented evidence that the dog's leash had been removed from the scene and was never found.  While Ibarra defended these actions at trial by arguing that he repainted the truck because he had planned to sell it, the temporary tag was on the passenger seat, and the leash was never recovered due to a subpar investigation, matters of credibility and conflicting evidence were solely within the jury's province.  *See People v. McIntier,* 134 P.3d 467, 471 (Colo. App. 2005).

Accordingly, we conclude that the evidence was sufficient to sustain the conviction.

### III.    The Prosecutor's Arguments

¶ 18     Ibarra also contends that the trial court reversibly erred because it "allowed the State to argue that he committed tampering when he left the scene." He is mistaken.

### A.    Additional Factual Background

¶ 19     During the jury instruction conference, defense counsel objected to the prosecutor's anticipated argument that "leaving the scene in a truck can support tampering." Counsel argued that it would be "an incorrect statement of the law" because Ibarra "was under no legal duty to remain on scene." The trial court initially agreed, stating, "I'm not going to allow that argument." Addressing the issue again after a break, however, the court ruled that it would, per defense counsel's request, instruct the jury that Ibarra "had no legal obligation to remain on the scene." The court added, "based upon that [instruction,] the parties can argue all reasonable inferences to be drawn from the evidence with respect to the closing arguments."

¶ 20 Shortly before closing arguments, and after the court granted defense counsel's request for a unanimity instruction for the charge of tampering with physical evidence, the prosecutor sought clarification, asking whether the court's ruling "include[d] taking the car and the leash from the scene of the crime as part of what the People would be able to argue in closing; is that correct?" The court responded, "I suppose you could argue all reasonable inferences based upon the evidence." Defense counsel objected, and the court replied:

> the statute says and [the] instruction says, [i]f a person believes there is a pending official proceeding and if the jury finds he removed physical evidence with the specific intent to impair its availability in that pending proceeding, that constitutes tampering. So I'm acquiescing and agreeing upon your request to make sure the jury understands that there's no legal obligation to remain. You can argue that, and the prosecution can argue the opposite in terms of his behaviors, but I understand the argument and disagree with it.

### B. Preservation and Standard of Review

¶ 21 The parties dispute whether this claim of error was preserved and what standard of review should apply. But we need not resolve this dispute because we do not discern error under any standard.

## C. Analysis

¶ 22     We disagree that the trial court permitted the prosecutor to argue that Ibarra's leaving the scene, in and of itself, constituted tampering with physical evidence.  Rather, the court agreed with defense counsel that the jury could not find Ibarra guilty of tampering solely because he left the scene, and the court provided a jury instruction to this effect — "The defendant had no legal obligation to remain on scene on South Santa Fe Drive on March 1, 2021."

¶ 23     We are not persuaded that the court "circumvented [this] instruction" by allowing the prosecutor "to effectively argue the contrary" because the prosecutor did not make such a contrary argument.  Rather, in closing, the prosecutor argued, "[s]o the bare fact that [Ibarra] took off in his car or in his truck is not what we are saying amounts to tampering with physical evidence here." Additionally, the prosecutor explained, "[b]y leaving the scene *and not just leaving the scene*, but leaving the scene with a key piece of evidence, that leash and the car to which it was attached, [Ibarra] tampered with physical evidence."  (Emphasis added.)

¶ 24 Furthermore, we disagree that the other purportedly improper prosecutorial statements constituted an argument that Ibarra was guilty of tampering simply as a result of having left the scene. After describing Ibarra's acts of painting the truck and removing the temporary tag, the prosecutor told the jury "you can take [Ibarra's] own statements to the detective as to why all of these happened." And then the prosecutor described how Ibarra told the detective the reason "he left the scene of that crime" was "because he didn't want to go to jail." The prosecutor argued that it "was already clear that [Ibarra] was thinking about the criminal process and what might happen to him." These statements, in context, indicate nothing more than an argument that Ibarra's act of leaving tended to reveal his belief that "an official proceeding [was] pending or about to be instituted" — an element of tampering that the prosecution was required to prove. § 18-8-610(1).

¶ 25 Accordingly, we reject this contention.

IV. Conclusion

¶ 26 The judgment is affirmed.

JUDGE DUNN and JUDGE GOMEZ concur.

12